# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

Michael E. Kennedy,    *

          Plaintiff,    *

                        *

          v.    *    **Civil Action No.** _____

                        *

Hankey Group, 4751 Wilshire Blvd., Suite    *
100, Los Angeles, California, 90010;    *
Westlake Services, dba Westlake Financial    *
Services, 4751 Wilshire Blvd., Suite 100,    *
Los Angeles, California, 90010; Don    *
Hankey, Chairman, Hankey Group, 4751    *
Wilshire Blvd., Suite 100, Los Angeles,    *
California, 90010; Ian Anderson, President,    *
Westlake Financial Services, 4751 Wilshire    *
Blvd., Suite 100, Los Angeles, California,    *
90010; Paul Kerwin, Chief Financial Officer    *
Westlake Financial Services, 4751 Wilshire    *
Blvd., Suite 100, Los Angeles, California,    *
90010; Kent Hagan, Vice-President,    *
Westlake Financial Services, 4751 Wilshire    *
Blvd., Suite 100, Los Angeles, California,    *
90010; and three "John Doe" employee's of    *
Westlake Financial Services, 4751 Wilshire    *
Blvd., Suite 100, Los Angeles, California,    *
90010,    *
        in their individual and    *
official capacities,    *
                    Defendants.    *

WDQ09CV2890

FILED
LOGGED          ENTERED
RECEIVED

OCT 27 2009

CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY

DEPUTY

## **COMPLAINT**

I.    **Jurisdiction in this case is based on:**

[ X ]   Federal question (suit is based upon a federal statute or provision of the United States Constitution).

[ X ]   Diversity (none of the defendants are residents of the state where plaintiff is a resident).

[ X ]   Other (explain) <u>Fair Debt Collection Practices Act ("FDCPA") of 1977.</u>

## A.   <u>Jurisdiction.</u>

This action is brought pursuant to the *Fair Debt Collection Practices Act ("FDCPA") of 1977* and State of Maryland *Fair Debt Collection Practices Act, Md. Code Ann., Business Regulation § 7-101, et seq.* The Court has jurisdiction over this action pursuant to *28 U.S. C. §1331*. The Plaintiff further invokes the pendent jurisdiction of this Court.

## B.   <u>Parties.</u>

(1)   The Plaintiff in this action is Michael Edward Kennedy, who presently resides at 33250 Old Ocean City Road, Parsonsburg, Maryland 21849.

(2)   The Defendants in this action are:

(a.)   The Hankey Group ("Hankey"), which is a legally registered corporate entity within the confines of the State of California, maintaining a corporate business address at 4751 Wilshire Blvd., Suite 100, Los Angeles, California, 90010. The Hankey Group operates as the parent corporation of Hankey Finance Company; Knight Management Insurance Services, LLC.; Midway Group; Midway Care Rental; Midway Auto Center; Midway Automotive Group; Toyota of North Hollywood; Nowcom Corporation; HFC Acceptance, LLC.; and Westlake Financial Services. It is sued as corporate entity and specifically provides leadership, direction, performance, and overall development and implementation of policies and procedures relative effecting to the day-to-day operations of its subsidiary companies.

(b.)   Westlake Services ("Westlake"), dba Westlake Financial Services, is a legally registered subsidiary corporate entity within the confines of the State of California, maintaining a corporate business address at 4751 Wilshire Blvd., Suite 100, Los Angeles, California, 90010. Westlake Services was incorporated in 1988 and operates as a subsidiary of the Hankey Group. Westlake does business specializing in the acquisition and servicing of near-prime to sub-prime automotive retail installment contracts and debt collections relating to these contracts. It further originates indirect retail installment contracts through a network of new and used car dealers in

the United States. It is sued as corporate entity and has the overall and specific responsibility for ensuring the company has adequate policies and procedures relative to compliance with all federal and state debt collection laws and practices.

(c.)    Don Hankey, who is employed as Chairman of the Hankey Group and maintains an official workplace address at 4751 Wilshire Blvd., Suite 100, Los Angeles, California, 90010. He is sued in his individual and official capacities as Chairman of the Hankey Group and is both generally and specifically responsible for the overall operations of Hankey and its subsidiaries by providing leadership; direction and performance in the day-to-day operations of its subsidiaries including, but not limited to, ensuring Hankey and its subsidiaries have adequate policies and procedures pertaining to debt collection practices and compliance with all federal and state laws relative to those collection practices.

(d.)    Ian Anderson, who is employed as President of Westlake Financial Services and maintains an official workplace address at 4751 Wilshire Blvd., Suite 100, Los Angeles, California, 90010. He is sued in his individual and official capacities as President of Westlake and is both generally and specifically responsible for the overall operations of Westlake and ensuring the development and implementation of adequate policies and procedures pertaining to debt collection practices by the company in compliance with all federal and state laws, and employee adherence to policies and procedures relative to those collection practices.

(e.)    Kent Hagan, who is employed as Vice-President of Westlake Financial Services, and maintains an official workplace address at 4751 Wilshire Blvd., Suite 100, Los Angeles, California, 90010. He is sued in his individual and official capacities as Vice-President of Westlake and is both generally and specifically responsible for the overall operations of Westlake and ensuring the development and implementation of adequate policies and procedures pertaining to debt collection practices by the company in compliance with all federal and state laws, and employee adherence to policies and procedures relative to those collection practices.

(f.)    Paul Kerwin, who is employed as Chief Financial Officer of Westlake Financial Services and maintains an official workplace address at 4751 Wilshire Blvd., Suite 100, Los Angeles, California, 90010. He is sued in his individual and official capacities as Chief Financial Officer of Westlake and is both generally and specifically responsible for the overall operations of Westlake and ensuring the development and implementation of adequate policies and procedures pertaining to debt collection practices by the company in compliance with all

federal and state laws, and employee adherence to policies and procedures relative to those collection practices.

(g.)   John Doe #1, who is employed as a Collections Manager of Westlake Financial Services and maintains an official workplace address at 4751 Wilshire Blvd., Suite 100, Los Angeles, California, 90010. He is sued in his individual and official capacities as Collections Manager of Westlake and is specifically responsible for the debt collection efforts of Westlake, ensuring Westlake employees adherence to all federal and state laws pertaining to debt collection practices, and ensuring Westlake employees adherence to all company policies and procedures pertaining to debt collection practices in compliance with those policies and procedures relative to those debt collection practices.

(h.)   John Doe #2, who is employed as a Debt Collections Representative of Westlake Financial Services and maintains an official workplace address at 4751 Wilshire Blvd., Suite 100, Los Angeles, California, 90010. He is sued in his individual and official capacities as a Debt Collections Representative of Westlake and is specifically responsible for adhering to all federal and state laws pertaining to debt collection, as well as personally adhering to all policies and procedures implemented by Westlake pertaining to those debt collection efforts.

(i.)   John Doe #3, who is employed as a Debt Collections Representative of Westlake Financial Services and maintains an official workplace address at 4751 Wilshire Blvd., Suite 100, Los Angeles, California, 90010. He is sued in his individual and official capacities as Debt Collections Representative of Westlake and specifically responsible for adhering to all federal and state laws pertaining to debt collection, as well as personally adhering to all policies and procedures implemented by Westlake pertaining to those debt collection efforts.

## C.   <u>The Complaint In This Matter Is Timely Filed</u>.

The statute of limitations for filing a *Fair Debt Collection Practices Act ("FDCPA")* action in accordance with the state laws of Maryland for a comparable civil action is two-years, with the time commencing from the date the facts supporting the claim become known and with the exercise of reasonable diligence. The material documents and factual evidence supporting the instant action became known to Mr. Kennedy in August of 2009. The Complaint in this matter is therefore timely filed.

**D.    Trial Demand.**

The Plaintiff in the above-captioned complaint, Michael E. Kennedy, demands a trial by jury in this matter.

**II.**                                    **Statement of the Case**

The Plaintiff in this matter brings suit under the *Fair Debt Collection Practices Act of 1977 ("FDCPA")* and *State of Maryland Fair Debt Collection Practices Act* collection laws prohibiting debt collectors from engaging in abusive, deceptive or unfair collection practices.

**III.**                                       **Background**

The Plaintiff, Michael E. Kennedy, brings suit under federal and Maryland debt collection laws prohibiting debt collectors from engaging in abusive, deceptive, or unfair collection practices.  Mr. Kennedy asserts that Defendants Hankey Group, Westlake Services (dba Westlake Financial Services (collectively "Hankey-Westlake"), and three Hankey-Westlake employees knowingly and willingly engaged in an unlawful telephone campaign in an effort to collect payment on a disputed debt owed Hankey-Westlake by an individual other than Plaintiff and who has been identified by Westlake debt collection employees as "Marilyn Wilson."  The Plaintiff does not know Marilyn Wilson; has no relation to Marilyn Wilson; and is not legally responsible for any debts incurred by Marilyn Wilson.  The Hankey-Westlake employees further threatened Plaintiff with repossession of his own personal vehicle – a vehicle which he has clear title to.  Lastly, even after being sent a cease and desist letter by Plaintiff, Hankey-Westlake and their employees continued in their unlawful telephone campaign in an effort to collect payment on a disputed debt owed Hankey-Westlake by an individual other than Plaintiff.  The individual and collective acts of Hankey-Westlake and its employees served to further invade the Plaintiff's right to privacy.

**IV.**                                          **Facts**

1.)    On or about August 1st, 2009 Plaintiff and his wife switched their wireless service provider from Sprint to Verizon.

2.)     On or about August 1st, 2009 Verizon provided 443-523-0180 as Plaintiff s new wireless cell phone number.

3.)     Plaintiff owns and operates two (2) business entities:

        (a)     AdCon, a business entity specializing in providing advertising concepts and Audio Visual demo's to its clients; and,

        (b)     Veritable Visages, a business entity specializing in providing graphic arts and designs to its clients.

4.)     On August 4th, 2009 Plaintiff had new business cards, business stationary, and business envelopes printed for his two business entities as identified above in item #3 of this complaint to incorporate Plaintiff's wireless cell number.

5.)     Plaintiff's incurred $1,236.57 in total cost for the printing of the items as identified above in item #4 of this complaint.

6.)     At approximately 2:26 pm on August 8th, 2009 Plaintiff received a telephone call on his 443-523-0180 cell phone number from an individual who identified himself as a representative of Westlake Financial Services (herein known as "Westlake").

7.)     The Westlake representative, as identified above in item #6 of this complaint, verbally requested to speak to a "Marilyn Wilson."

8.)     Plaintiff informed the Westlake representative, during this telephone conversation as identified above in item #6 of this complaint, that Plaintiff had just received the new telephone number and did not know any person identified as "Marilyn Wilson."

9.)     Plaintiff requested the Westlake representative, during this telephone conversation as identified above in item #6 of this complaint, not to contact Plaintiff again as he did not know any person by the name of "Marilyn Wilson."  Plaintiff then ended the telephone conversation.

10.)    The telephone call identified above in item #6 of this complaint was received by Plaintiff from telephone number 323-692-8800.

11.)    On information and belief, the telephone number as identified above in item #10 of this complaint is telephone directory listed as belonging to Westlake.

12.)    At approximately 11:05 am on August 12th, 2009 Plaintiff was again contacted by an individual who identified himself as "Edwin" and a representative of Westlake.

13.)    The Westlake representative, as identified above in item #12 of this complaint, requested to speak to "Marilyn Wilson."

14.) Plaintiff again informed the Westlake representative, during this telephone conversation as identified above in item #12 of this complaint, that Plaintiff had just received the telephone number and did not know any person identified as "Marilyn Wilson."

15.) Plaintiff requested the Westlake representative, during this telephone conversation as identified above in item #12 of this complaint, not to contact Plaintiff again as he did not know any person by the name of "Marilyn Wilson." Plaintiff then ended the telephone conversation.

16.) At approximately 6:37 pm on August 13th, 2009 Plaintiff was once more again contacted by individual who identified himself as a representative of Westlake.

17.) The Westlake representative, as identified above in item #16 of this complaint, once more requested to speak to "Marilyn Wilson" and further demanded to know the location of a 2004 Chevrolet Blazer.

18.) Plaintiff once again informed the Westlake representative during the conversation as identified above in item #16 of this complaint that Plaintiff had just received the 443-523-0180 telephone number; did not know any person identified as "Marilyn Wilson"; and, while Plaintiff did own a Chevrolet Blazer, it was not a 2001.

19.) At this point, the Westlake representative as identified above in item #16 of this complaint became verbally loud and abusive by demanding Plaintiff "put Marilyn Wilson on the phone right now" and "give me your social security number and all the information on your Chevy Blazer and where it can be located."

20.) Plaintiff again stated during the conversation as identified above in item #16 of this complaint that he did not owe Westlake any monies; refused to provide any information to the Westlake representative relative to his Chevy Blazer as he had clear title to it; and reiterated once more not to contact Plaintiff again as he did not know "Marilyn Wilson."

21.) Plaintiff disconnected the conversation when the Westlake representative as identified above in item #16 of this complaint began using obscene and profane language toward Plaintiff.

22.) Plaintiff's 2001 Chevrolet Blazer was financed by the Wilmington Trust Company.

23.) Plaintiff's 2001 Chevrolet Blazer Wilmington Trust Company auto loan was paid in full and Plaintiff had clear title to the vehicle prior to August 1st, 2009.

24.) On August 14th, 2009 Plaintiff mailed a cease and desist letter, via certified mail, properly addressed to Westlake Financial Services at 4751 Wilshire Blvd., Suite 100, Los Angeles, California, 90010.

25.)   Plaintiff, in his cease and desist letter as identified above in item #24 of this complaint, notified Westlake that: (a) he had received the 443-523-0180 telephone number in August of 2009; (b) did not know "Marilyn Wilson" nor was he legally responsible for any debts owed by her to Westlake; (c) had clear title to his 2001 Chevrolet Blazer and did not personally owe any monies to Westlake; (d) demanded that Westlake provide a copy of the contract proving that Plaintiff owed Westlake a debt and that the alleged debt was unpaid; and (e) formally requested that, if such debt could not be proved as being owed Westlake by Plaintiff, that Westlake and its representatives to cease and desist from calling Plaintiff relative to any debts owed Westlake by "Marilyn Wilson."

26.)   Westlake did not respond to the Plaintiff's cease and desist letter as identified above in item #25 of this complaint.

27.)   Westlake has not, as of the filing of this complaint, provided Plaintiff with a copy of any contract proving that Plaintiff owed Westlake a debt and that the alleged debt was unpaid.

27.)   At approximately 6:51 pm on August 16th, 2009 Plaintiff was again contacted by an individual who identified himself as "Miguel" and a representative of Westlake, and who demanded to speak with "Marilyn Wilson."

28.)   Plaintiff informed the Westlake representative, during this telephone conversation as identified above in item #27 of this complaint, that Plaintiff: (a) had received the telephone number in August of 2009; (b) did not owe Westlake any monies; (c) had mailed a formal cease and desist letter to Westlake on August 14th, 2009; and (d) did not know "Marilyn Wilson."

29.)   The Westlake representative as identified above in item #27 of this complaint began using obscene and profane language to Plaintiff, demanded Plaintiff "put Marilyn Wilson on the phone" and threatened to repossess Plaintiff's Chevy Blazer unless Plaintiff "put Marilyn Wilson on the telephone right this second."

30.)   Plaintiff, at this point, ended the telephone conversation with the Westlake representative as identified above in items #27-29 of this complaint.

31.)   At approximately 3:10 pm on August 17th, 2009 Plaintiff was once again contacted by an individual who identified himself as a representative of Westlake, and demanded to speak with "Marilyn Wilson."

32.)   Once again, Plaintiff informed the Westlake representative, in this telephone conversation as identified above in item #31 of this complaint, that Plaintiff: (a) had received the telephone

number in August of 2009; (b) did not owe Westlake any monies; (c) had mailed a formal cease and desist letter to Westlake on August 14th, 2009; and (d) did not know "Marilyn Wilson."

33.)     The Westlake representative as identified above in item #31 of this complaint stated to Plaintiff during this conversation on August 17th, 2009, that "I don't give a fuck about no letter, just put Marilyn Wilson on the phone or we can make life tough on you. I've been taping this so everyone will know you don't pay your bills"

34.)     Plaintiff then ended the conversation with the Westlake representative as identified above in items #31-33 of this complaint.

35.)     At approximately 1:57 pm on August 18th, 2009 Plaintiff was once more contacted by an individual who identified himself as a representative of Westlake, and demanded to speak with "Marilyn Wilson."

36.)     Plaintiff informed the Westlake representative, in this telephone conversation as identified above in item #35 of this complaint, that Plaintiff: (a) had received the telephone number in August of 2009; (b) did not owe Westlake any monies; (c) had mailed a formal cease and desist letter to Westlake on August 14th, 2009; and (d) did not know "Marilyn Wilson."

37.)     The Westlake representative as identified above in item #35 of this complaint stated to Plaintiff during this conversation on August 18th, 2009 that "I know Marilyn Wilson lives there and we have your address so put her on the phone right now or kiss the car goodbye."

38.)     Plaintiff then ended the conversation with the Westlake representative as identified above in items #35-37 of this complaint.

39.)     At approximately 1:29 pm on August 22nd, 2009 Plaintiff was contacted by an individual who identified himself as a representative of Westlake, and demanded to speak with "Marilyn Wilson."

40.)     Plaintiff informed the Westlake representative, in this telephone conversation as identified above in item #39 of this complaint, that Plaintiff: (a) did not owe Westlake any monies; (b) did not know Marilyn Wilson; (c) had mailed a formal cease and desist letter to Westlake on August 14th, 2009; and (d) requested that Westlake and its representatives abide by the cease and desist letter and stop making harassing and annoying telephone calls to Plaintiff for nonexistent monies owed to Westlake.

41.)     The Westlake representative as identified above in item #39 of this complaint stated to Plaintiff during this conversation on August 22nd, 2009 that "We can make as many phone calls

to you as we want until we either get the money you owe or the car back.  Your choice, pay up and we'll stop calling."

42.)    Plaintiff then ended the conversation with the Westlake representative as identified above in items #39-41 of this complaint.

43.)    At approximately 8:18 pm on August 24th, 2009 Plaintiff was contacted by an individual who identified himself as a representative of Westlake, and again demanded to speak with "Marilyn Wilson."

44.)    Plaintiff again reiterated to the Westlake representative, in this telephone conversation as identified above in item #43 of this complaint, that Plaintiff: (a) did not owe Westlake any monies; (b) did not know Marilyn Wilson; (c) had mailed a formal cease and desist letter to Westlake on August 14th, 2009; and (d) demanded that Westlake stop making harassing and annoying telephone calls to Plaintiff for nonexistent monies owed to Westlake.

45.)    Plaintiff ended the conversation as identified above in item #43 of this complaint when the Westlake representative began using obscene and profane language to Plaintiff in demanding to speak with "Marilyn Wilson."

46.)    At approximately 12:27 pm on August 26th, 2009 Plaintiff was contacted by an individual who identified himself as a representative of Westlake, and demanded to speak with "Marilyn Wilson."

47.)    Plaintiff once again reiterated to the Westlake representative, in this telephone conversation as identified above in item #46 of this complaint, that Plaintiff: (a) did not owe Westlake any monies; (b) did not know Marilyn Wilson; (c) had mailed a formal cease and desist letter to Westlake on August 14th, 2009; and (d) demanded that Westlake stop making harassing and annoying telephone calls to Plaintiff for nonexistent monies owed to Westlake.

48.)    The Westlake representative as identified above in item #46 of this complaint stated to Plaintiff during this conversation on August 26th, 2009 that "You and Wilson owe us and we can do whatever is necessary to make you pay your debts.  You want to see your credit score go in the trash -- we can do that – we can make it happen," and "Our legal department reviewed the account and it's a joint debt owed by you and Wilson that's going to stay on your credit file forever."

49.)    At this point, Plaintiff ended the conversation with the Westlake representative as identified above in item #46 of this complaint.

50.)    At approximately 4:58 pm on August 27th, 2009 Plaintiff was once more again contacted by an individual who identified himself as a representative of Westlake, and demanded to speak with "Marilyn Wilson."

51.)    Plaintiff again notified the Westlake representative, in this telephone conversation as identified above in item #50 of this complaint, that Plaintiff: (a) did not owe Westlake any monies; (b) did not know Marilyn Wilson; (c) had mailed a formal cease and desist letter to Westlake on August 14th, 2009; and (d) demanded that Westlake stop making harassing and annoying telephone calls to Plaintiff for nonexistent monies owed to Westlake.

52.)    The Westlake representative as identified above in item #50 of this complaint stated to Plaintiff during this conversation on August 27th, 2009 that Plaintiff would "continue receiving calls from Westlake until Wilson's account was settled," and that "We will institute legal action to garnish your paycheck and take your home if you don't pay this debt."

53.)    At this point, Plaintiff ended the conversation with the Westlake representative as identified above in item #50 of this complaint.

54.)    On August 28th, 2009, Plaintiff was forced to change the telephone number utilized by his two business entities due, to and proximately caused by, Westlake's harassing and annoying phone calls and continued threat thereof.

55.)    Plaintiff's forced changing of the telephone number required the printing of new business cards, business stationary, and business envelopes printed for his two (2) business entities as identified above in item #3 of this complaint.

56.)    Plaintiff's incurred the additional cost of $1,436.09 in total cost for the printing of the items as identified above in item #55 of this complaint.

57).    On information and belief, within five (5) days after first contacting Plaintiff, Westlake and its representatives were required to provide Plaintiff with written notice of the amount of money Plaintiff allegedly owed; the name of the creditor to whom it was owed; and what action needed to be taken by Plaintiff if he did not owe the money.

58.)    Plaintiff was not provided by Westlake or its representatives with written notice of the amount of money Plaintiff allegedly owed; the name of the creditor to whom it was owed; and what action needed to be taken by Plaintiff if he did not owe the money.

59.)   On information and belief, Westlake and its representatives were required by law to end all telephone calls and collection efforts against Plaintiff after receiving Plaintiff's August 14th, 2009 formal cease and desist letter.

60.)   Plaintiff does not owe Hankey, Westlake, or any other subsidiary companies of Hankey, any monies.

61.)   On information and belief, Westlake and its representatives' use of threats, abusive and obscene or profane language, and harassing and annoying calls to Plaintiff as described above in items #6-53 of this complaint, violated the *Fair Debt Collection Practices Act ("FDCPA") of 1977* provisions in collecting or attempting to collect an alleged debt.

62.)   On information and belief, Westlake and its representatives' use of threats, abusive and obscene or profane language, and harassing and annoying calls to Plaintiff as described above in items #6-53 of this complaint, violated the State of Maryland's *Fair Debt Collection Practices Act, Md. Code Ann., Business Regulation § 7-101, et seq.,* in collecting or attempting to collect an alleged debt.

63.)   On information and belief, the continued contacting of Plaintiff after August 14th, 2009, by Westlake and its employees was a knowing, willful, and intentional act of the Defendants to violate the *Fair Debt Collection Practices Act ("FDCPA") of 1977* by making harassing and annoying calls employing the use of threats, abusive and obscene or profane language in the attempted collection of an alleged debt.

64.)   On information and belief, the continued contacting of Plaintiff after August 14th, 2009, by Westlake and its employees was a knowing, willful, and intentional act of the Defendants to violate the State of Maryland's *Fair Debt Collection Practices Act, Md. Code Ann., Business Regulation § 7-101, et seq.,* in the attempted collection of an alleged debt.

65.)   The use of threats and threats of repossession, abusive and obscene or profane language, and harassing and annoying calls in the attempted collection of an alleged debt owed by Plaintiff, as described above in items #6-53 of this complaint, by Defendants invaded Plaintiff's right to privacy and proximately caused emotional distress or mental anguish being suffered by Plaintiff.

66.)   The actions of Defendants as described above in items #6-53 of this complaint proximately caused Plaintiff to suffer the physical and mental reactions of apprehension; anxiety; depression; appetite disorders and weight; sleeping problems; fatigue; restlessness; and mood changes coupled with a loss of drive and enthusiasm to pursue everyday activities and personal

responsibilities by fear of loss of property, loss of income, and subjection to adverse actions that pertained or related to his personal credit history.

67.)    The Defendants' use of threats to making continued harassing and annoying calls in the attempted collection of an alleged debt owed by Plaintiff, as described above in items #6-53 of this complaint, proximately caused Plaintiff $2,672.66 in business expenses.

68.)    The Defendants' continued harassing and annoying calls in the attempted collection of an alleged debt owed by Plaintiff, as described above in items #6-53 of this complaint, after being sent a cease and desist letter, invaded Plaintiff's right to privacy.

69.)    On information and belief, Defendants Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, and Paul Kerwin had a duty to exercise ordinary care and reasonable diligence to ensure Hankey and its subsidiary companies developed and implemented adequate policies and procedures pertaining to debt collection practices that complied with all federal and state laws relative to those collection practices.

70.)    On information and belief, the failure of Defendant Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, and Paul Kerwin to exercise ordinary care and reasonable diligence in ensuring Hankey and its subsidiary companies developed and implemented adequate policies and procedures pertaining to debt collection practices that complied with all federal and state laws relative to those collection practices, and to ensure employees adherence to those policies and procedures, subjected the Plaintiff to threats, abusive and obscene or profane language, and harassing and annoying calls by their employees and proximately caused emotional distress or mental anguish being suffered by Plaintiff and a loss of $2,672.66 in personal income.

71.)    On information and belief, the failure of Defendant Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, and Paul Kerwin to exercise ordinary care and reasonable diligence in ensuring Hankey and its subsidiary companies developed and implemented adequate policies and procedures pertaining to debt collection practices that complied with all federal and state laws relative to those collection practices, and to ensure employees adherence to those policies and procedures, further violated the *Fair Debt Collection Practices Act ("FDCPA") of 1977* and State of Maryland's *Fair Debt Collection Practices Act, Md. Code Ann., Business Regulation § 7-101, et seq.,* by their employees attempting to collect an alleged debt that was not owed by Plaintiff to Defendants..

72.) On information and belief, Defendants Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, and Paul Kerwin had a further continuing duty to exercise ordinary care and reasonable diligence to adhere to, and comply with, all federal and state laws relative and pertaining to debt collection practices.

73.) On information and belief, the failure of Defendant Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, and Paul Kerwin to exercise ordinary care and reasonable diligence to adhere to, and comply with, all federal and state laws relative and pertaining to debt collection practices, and to ensure employees adherence to those federal and state laws relative and pertaining to debt collection practices, subjected the Plaintiff to threats, abusive and obscene or profane language, and harassing and annoying calls by their employees and proximately caused emotional distress or mental anguish being suffered by Plaintiff and a loss of $2,672.66 in personal income.

74.) On information and belief, the failure of Defendant Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, and Paul Kerwin to exercise ordinary care and reasonable diligence in ensuring Hankey and its subsidiary companies developed and implemented adequate policies and procedures pertaining to debt collection practices that complied with all federal and state laws relative to those collection practices, and to ensure employees adherence to those policies and procedures, further violated the *Fair Debt Collection Practices Act ("FDCPA") of 1977* and State of Maryland's *Fair Debt Collection Practices Act, Md. Code Ann., Business Regulation § 7-101, et seq.,* by their employees attempting to collect an alleged debt that was not owed by Plaintiff to Defendants..

75.) On information and belief, Defendants John Doe #1, John Doe #2, and John Doe #3 had a duty to exercise ordinary care and reasonable diligence in adhering to, and complying with, all federal and state laws relative and pertaining to debt collection practices.

76.) On information and belief, the failure of Defendants John Doe #1, John Doe #2, and John Doe #3 to exercise ordinary care and reasonable diligence in adhering to, and complying with, all federal and state laws relative and pertaining to debt collection practices further violated the *Fair Debt Collection Practices Act ("FDCPA") of 1977* and State of Maryland's *Fair Debt Collection Practices Act, Md. Code Ann., Business Regulation § 7-101, et seq.,* by their individual and collective actions in attempting to collect an alleged debt that was not owed by Plaintiff to Defendants Hankey and Westlake.

77.)    On information and belief, the failure of Defendants John Doe #1, John Doe #2, and John Doe #3 to exercise ordinary care and reasonable diligence in adhering to, and complying with, all federal and state laws relative and pertaining to debt collection practices subjected Plaintiff to threats, abusive and obscene or profane language, and harassing and annoying calls by their individual and collective actions and proximately caused emotional distress or mental anguish being suffered by Plaintiff and a loss of $2,672.66 in personal income.

78.)    On information and belief, the individual and/or collective actions of Defendants Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, Paul Kerwin, John Doe #1, John Doe #2, and John Doe #3 as described above in items #6 to #65 of this complaint by subjecting Plaintiff to the intentional infliction of emotional distress and mental anguish in violation of *Md. Code Ann., Fam. Law § 14-101.*

79.)    On information and belief, the individual and/or collective actions of Defendants Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, Paul Kerwin, John Doe #1, John Doe #2, and John Doe #3 as described above in items #6 to #65 of this complaint were malicious and/or conducted in complete indifference to the rights of others.

80.)    On information and belief, the individual and/or collective actions of Defendants Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, Paul Kerwin, John Doe #1, John Doe #2, and John Doe #3 as described above in items #6 to #65 of this complaint, by communicating repeated threats and/or use of profane or obscene language, were malicious and conducted in a manner reasonably expected to annoy, abuse, torment, harass, or embarrass another in violation of *Md. CRIMINAL LAW Code Ann. §3-804)(a)(1), §3-804)(a)(2),* and *§3-804)(a)(3).*

# V.                                          **Standards of Law**

### A.     **Maryland State Law**

Pursuant to the provisions of the Maryland *Fair Debt Collection Practices Act, Md. Code Ann., Business Regulation § 7-101, et seq.,* in collecting or attempting to collect an alleged debt a collector may not:

1.)    Use or threaten force or violence;

2.)    Threaten criminal prosecution, unless the transaction involved the violation of a criminal statute;

3.)    Disclose or threaten to disclose information which affects the debtor's reputation for credit worthiness with knowledge that the information is false;

4.)   Except as permitted by statute, contact a person's employer with respect to a delinquent indebtedness before obtaining final judgment against the debtor;

5.)   Except as permitted by statute, disclose or threaten to disclose to a person other than the debtor or his spouse or, if the debtor is a minor, his parent, information which affects the debtor's reputation, whether or not for credit worthiness, with knowledge that the other person does not have a legitimate business need for the information;

6.)   Communicate with the debtor or a person related to him with the frequency, at the unusual hours, or in any other manner as reasonably can be expected to abuse or harass the debtor;

7.)   Use obscene or grossly abusive language in communicating with the debtor or a person related to him;

8.)   Claim, attempt, or threaten to enforce a right with knowledge that the right does not exist; or

9.)   Use a communication which simulates legal or judicial process or gives the appearance of being authorized, issued, or approved by a government, governmental agency, or lawyer when it is not.

*Maryland Fair Debt Collection Practices Act § 14-202.*

Moreover, Maryland's *Fair Debt Collection Practices Act § 14-203* provides in pertinent part that a collector who violates any provision of this subtitle is liable for any damages proximately caused by the violation, including damages for emotional distress or mental anguish suffered with or without accompanying physical injury.

Similarly, pursuant to the provision as contained in *Md. CRIMINAL LAW Code Ann. §3-804* pertaining to the misuse of telephone facilities and equipment, it is:

(a)   Prohibited. - A person may not use telephone facilities or equipment to make:

(1)   an anonymous call that is reasonably expected to annoy, abuse, torment, harass, or embarrass another;

(2)   repeated calls with the intent to annoy, abuse, torment, harass, or embarrass another; or

(3)   a comment, request, suggestion, or proposal that is obscene, lewd, lascivious, filthy, or indecent.

(b)   Penalty.

A person who violates this section is guilty of a misdemeanor and on conviction is subject to imprisonment not exceeding 3 years or a fine not exceeding $500 or both.

## B.    Federal Law

Pursuant to the provisions of the *Fair Debt Collection Practices Act ("FDCPA") of 1977*[1], under the provisions of §806 of the *FDCPA* pertaining to harassment or abuse, a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)    The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.

(2)    The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.

(3)    The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3) of this Act.

(4)    The advertisement for sale of any debt to coerce payment of the debt.

(5)    Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.

(6)    Except as provided in section 804, the placement of telephone calls without meaningful disclosure of the caller's identity.

*[Codified to 15 U.S.C. 1692d]*

Similarly, in dealing with communication in connection with debt collection, §805(c)[2] of the *FDCPA* provides that if a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or the consumer wishes the debt collector to cease further communication with the consumer, the debt collector shall not communicate further with the consumer with respect to such debt, except--

---

[1]    Section 806 of title VIII of the Act of May 29, 1968 (Pub. L. No. 90-321), as added by the Act of September 20, 1977 (Pub. L. No. 95-109; 91 Stat. 877), effective March 20, 1978]

[2]    Section 805 of title VIII of the Act of May 29, 1968 (Pub. L. No. 90-321), as added by the Act of September 20, 1977 (Pub. L. No. 95-109; 91 Stat. 876), effective March 20, 1978

(1)     To advise the consumer that the debt collector's further efforts are being terminated;

(2)     To notify the consumer that the debt collector or creditor may invoke specified remedies which are ordinarily invoked by such debt collector or creditor; or

(3)     Where applicable, to notify the consumer that the debt collector or creditor intends to invoke a specified remedy.

If such notice from the consumer is made by mail, notification shall be complete upon receipt.

Similarly, §805 (d) provides that, for the purpose of this section, the term "consumer" includes the consumer's spouse, parent (if the consumer is a minor), guardian, executor, or administrator.

*[Codified to 15 U.S.C. 1692c]*

Moreover, a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of §807 of the *FDCPA*[3]:

(1)     The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of--

(A)  The character, amount, or legal status of any debt; or

(B)  Any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3)     The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4)     The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5)     The threat to take any action that cannot legally be taken or that is not intended to be taken.

---

[3]     Section 807 of title VIII of the Act of May 29, 1968 (Pub. L. No. 90-321), as added by the Act of September 20, 1977 (Pub. L. No. 95-109; 91 Stat. 877), effective March 20, 1978; as amended by section 2305 of the Act of September 30, 1996, (Pub. L. No. 104-208; 110 Stat. 3009-425), effective December 29, 1996

(6)     The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to--

(A)  lose any claim or defense to payment of the debt; or

(B)  become subject to any practice prohibited by this title.

(7)     The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8)     Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9)     The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11)    The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

(12)    The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13)    The false representation or implication that documents are legal process.

(14)    The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15)    The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16)    The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 603(f) of this Act.

*[Codified to 15 U.S.C. 1692e]*

Likewise, §808 of the *FDCPA*[4] provides that a debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1)     The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

(2)     The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.

(3)     The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.

(4)     Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.

(5)     Causing charges to be made to any person for communications by concealment of the true purpose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.

(6)     Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--

(A)  There is no present right to possession of the property claimed as collateral through an enforceable security interest;

(B)  There is no present intention to take possession of the property; or

(C)  The property is exempt by law from such dispossession or disablement.

(7)     Communicating with a consumer regarding a debt by post card.

(8)     Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

*[Codified to 15 U.S.C. 1692f]*

---

[4]     Section 808 of title VIII of the Act of May 29, 1968 (Pub. L. No. 90-321), as added by the Act of September 20, 1977 (Pub. L. No. 95-109; 91 Stat. 879), effective March 20, 1978

Lastly, §809(a) of the *FDCPA*[5] provides that, within five (5) days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing--

(1)     The amount of the debt;

(2)     The name of the creditor to whom the debt is owed;

(3)     A statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4)     A statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

(5)     A statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

§809 (b) similarly provides that if the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

*[Codified to 15 U.S.C. 1692g]*

---

[5]     *Section 809 of title VIII of the Act of May 29, 1968 (Pub. L. No. 90-321), as added by the Act of September 20, 1977 (Pub. L. No. 95-109; 91 Stat. 879), effective with respect to debts for which the initial attempt to collect occurs after March 20, 1978; section 802 of title VII of the Act of October 13, 2006 (Pub. L. No. 109-351, 120 Stat. 2006), effective October 13, 2006*

# VI.                     <u>Statement of Claims.</u>

### A.)   <u>FIRST CLAIM.</u>

**DEFENDANTS' ACTIONS WERE IN VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACTS OF THE UNITED STATES AND OF THE STATE OF MARYLAND.**

The Defendants individual and/or collective actions as described above in items #6-66 of this complaint violated the Fair Debt Collection Practices Act of the United States and of the State of Maryland.

### B.)   <u>SECOND CLAIM.</u>

**DEFENDANTS' ACTIONS WERE MALICIOUS AND/OR CONDUCTED IN RECKLESS DISREAGARD OF THE PLAINTIFF'S RIGHT TO PRIVACY AND IN COMPLETE INDIFFERENCE TO THE RIGHTS OF OTHERS.**

The Defendants individual and/or collective actions described above in items #6-66 of this complaint were malicious in nature and conducted with reckless disregard and in complete indifference to the Plaintiff's right to privacy or to the rights of others.

### C.)   <u>THIRD CLAIM.</u>

**DEFENDENTS' ENGAGED IN MALICIOUS AND/OR RECKLESS CONDUCT TO WILLFULLY OR KNOWINGLY CAUSE, AND PROXIMATELY RESULT IN, THE NEGLIGENT AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND MENTAL ANGUISH.**

The Defendants individual and/or collective actions described above in items #6-66 of this complaint were malicious in nature and conducted with reckless disregard which they knew, or should have known, would proximately cause or result in Plaintiff suffering, the negligent and intentional infliction of emotional distress and mental anguish.

**D.)**     **FOURTH CLAIM.**

**DEFENDANTS' ACTIONS WERE IN VIOLATION OF THE CRIMINAL LAWS OF THE STATE OF MARYLAND.**

The Defendants individual and/or collective actions described above in items #6-66 of this complaint were malicious in nature and conducted with reckless disregard to the criminal laws of the State of Maryland prohibiting the communicating of repeated threats or use of profane and/or obscene language in a manner reasonably expected to annoy, abuse, torment, harass, or embarrass another.

**VII.**                          **Relief Requested.**

**WHEREFORE**, Plaintiff requests that the Court grant the following relief:

**A.**    **Issue a declaratory judgment stating that:**

1.)     The actions of Defendants Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, Paul Kerwin, John Doe #1, John Doe #2, and John Doe #3 as described above in items #6 to #66 of this complaint violated the *Fair Debt Collection Practices Act ("FDCPA") of 1977.*

2.)     The actions of Defendants Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, Paul Kerwin, John Doe #1, John Doe #2, and John Doe #3 as described above in items #6 to #66 of this complaint violated the provisions of the Maryland *Fair Debt Collection Practices Act, Md. Code Ann., Business Regulation § 7-101, et seq.,*

3.)     The actions of Defendants Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, Paul Kerwin, John Doe #1, John Doe #2, and John Doe #3 as described above in items #6 to #66 of this complaint violated Plaintiff's right to privacy.

4.)     The actions of Defendants Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, Paul Kerwin, John Doe #1, John Doe #2, and John Doe #3 as described above in items #6 to #66 of this complaint violated *Md. Criminal Law Code Ann. §3-804(a)(1); Md. Criminal Law Code Ann. §3 804(a)(2);* and Md. Criminal Law Code Ann. *§3-80)(a)(3).*

**B.**    **Award compensatory damages in the following amounts:**

1.)     $2,672.66 with accompanying compounded interest commencing on August 28th, 2009, at an equitable rate determined by the court, jointly and severally against Defendants

Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, Paul Kerwin, John Doe #1, John Doe #2, and John Doe #3 for the loss of personal income proximately caused by Defendants actions as described above in items #6 to #66 of this complaint; and,

    2.)    $300,000.00 00 jointly and severally against Defendants Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, Paul Kerwin, John Doe #1, John Doe #2, and John Doe #3 for the intentional infliction of emotional distress and mental anguish suffered by Plaintiff and proximately caused by the Defendants violations of the *Fair Debt Collection Practices Act ("FDCPA") of 1977;* Maryland's *Fair Debt Collection Practices Act, Md. Code Ann., Business Regulation § 7-101, et seq.,;* and *Md. Criminal Law Code Ann. §3-80, et seq.*; and,

    3.)    Award Plaintiff the costs of this action incurred herein, including reasonable attorneys' fees and expert fees; and,

    4.)    Award Plaintiff Pre-Judgment and Post-Judgment interest, as provided by law.

**C.**    **Award punitive damages in the following amounts:**

    1.)    $750,000.00 jointly and severally against Defendants Hankey, Westlake, Don Hankey, Ian Anderson, Kent Hagan, Paul Kerwin, John Doe #1, John Doe #2, and John Doe #3 for their willful violation of invading Plaintiff's right to privacy and their knowing and willful violations of the *Fair Debt Collection Practices Act ("FDCPA") of 1977;* Maryland's *Fair Debt Collection Practices Act, Md. Code Ann., Business Regulation § 7-101, et seq.,; Md. Criminal Law Code Ann. §3-80, et seq.;* and the state laws and Constitution of the State of Maryland.

**D.**    **Grant such other relief as it may appear the Plaintiff is entitled.**

Respectfully submitted,

Michael E. Kennedy
Plaintiff, pro se

Dated this 26<u>th</u> day of October, 2009.

Michael E. Kennedy
33250 Old Ocean City Road
Parsonsburg, Maryland 21849
(410) 572-8802
(443) 523-8196