```
              IN THE UNITED STATES DISTRICT COURT FOR
            THE DISTRICT OF MARYLAND, NORTHERN DIVISION

                                *
MICHAEL E. KENNEDY,
                                *
      Plaintiff,
                                *
          v.                          CIVIL NO.:  WDQ-09-2890
                                *
HANKEY GROUP, et al.
                                *
      Defendants.
                                *

*     *     *     *     *     *     *     *     *     *     *     *     *
```

MEMORANDUM OPINION

Michael E. Kennedy sued the Hankey Group, Westlake Services Inc. ("Westlake"), Don Hankey, Ian Anderson, Paul Kerwin, Kent Hagan, and three "John Doe" employees of Westlake for violations of the Federal Fair Debt Collection Practices Act ("FDCPA"), the Maryland Consumer Debt Collection Act ("MCDCA"), and related torts.  Pending are Kennedy's motions to compel, for sanctions, and for a hearing on his motion for sanctions,[1] and the Defendants'[2] motions to dismiss and to strike.  For the following reasons, Kennedy's motions will be denied; the Defendants'

---

[1]  Under Local Rule 105.6, the Court has determined that a hearing is not required.  D. Md. R. 105.6 (2009).

[2]  Kennedy is seeking to learn the identities of the "John Doe" defendants.  "The Defendants" will refer to the Hankey Group, Westlake, Hankey, Anderson, Kerwin, and Hagan.

motion to strike will be granted, and their motion to dismiss

will be granted in part and denied in part.

I.   Background[3]

Kennedy resides in Maryland and owns AdCon and Veritable

Visages, advertising and graphic art businesses.  Compl. ¶¶

B(1), D(IV)(3).  On August 1, 2009, Kennedy switched his

wireless phone provider to Verizon and was given 443-523-0180 as

his new telephone number.  *Id*. ¶¶ D(IV)(1)-(2).  On August 4,

2009, Kennedy spent $1,236.57 to print business cards and

stationary with this number.  *Id*. ¶¶ (D)(IV)(4)-(5).

On August 8, 2009, a Westlake representative called

Kennedy's new telephone number and asked to speak with Marilyn

Wilson.[4]  *Id*. ¶¶ D(IV)(6)-(7).  After explaining that he had just

received the telephone number and did not know Marilyn Wilson,

Kennedy asked the Westlake representative not to contact him

again and ended the call.  *Id*. ¶¶ D(IV)(8)-(9).  On August 12,

2009, Kennedy received another call from a Westlake

representative[5] for Marilyn Wilson.  *Id*. ¶¶ D(IV)(12)-(13).  He

---

[3]  For the pending motion, the well-pleaded allegations in the
Complaint are accepted as true. *See Mylan Labs., Inc. v.
Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).

[4]  The call was received from telephone number (323)692-8800,
which is listed as Westlake's number in the telephone directory.
Compl. ¶¶ D(IV)(10)-(11).

[5]  This Westlake representative identified himself as "Edwin."
*Id*. ¶ D(IV)(12).

again informed the caller that he did not know anyone by that
name and asked not to be contacted.  *Id*. ¶ D(IV)(15).

On August 13, 2009, Kennedy received a third call from a
Westlake representative, asking for Marilyn Wilson and demanding
the location of a 2004 Chevrolet Blazer.  *Id*. ¶ D(IV)(17).
Kennedy told the caller that he had recently received the
telephone number, did not know Marilyn Wilson, and owned a 2001-
-and not a 2004--Chevrolet Blazer.  *Id*. ¶ D(IV)(18).  The caller
loudly demanded that Kennedy "put Marilyn Wilson on the phone
right now" and provide his "social security number and all the
information on [his] Chevy Blazer and where it can be located."
*Id*. ¶ D(IV)(19).  After stating that he was not in debt to
Westlake and had clear title to his vehicle,[6] Kennedy refused to
provide further information, reiterated that he did not know
Marilyn Wilson, and told the caller not to contact him again.
*Id*. ¶ D(IV)(20).  When the caller became profane, Kennedy hung
up.  *Id*. ¶ D(IV)(21).

On August 14, 2009, Kennedy sent Westlake a cease and
desist letter by certified mail.  *Id*. ¶ D(IV)(24).[7]  From August

---

[6]  Kennedy alleges that his 2001 Chevrolet Blazer had been
financed by the Wilmington Trust Company and that he had fully
paid his loan and had clear title before August 1, 2009.  *Id*. ¶¶
D(IV)(22)-(23).

[7]  In that letter, Kennedy explained that he (1) had received the
(443)523-0180 number in early August 2009; (2) did not know

16[8] to August 27, 2009, Westlake representatives called Kennedy

seven times, demanding to speak with Marilyn Wilson and

threatening to "make life tough," "do whatever is necessary to

make [him] pay," and "institute legal action to garnish [his]

paycheck and take [his] home" if he did not pay.  *Id*. ¶¶

D(IV)(27)-(52).[9]  Kennedy informed every caller that he did not

know Marilyn Wilson, did not owe Westlake any money, had sent

Westlake a cease and desist letter demanding that they stop

harassing him.  *Id*. ¶¶ D(IV)(28), (32), (36), (40), (44), (47),

(51).  On August 28, 2009, Kennedy changed his wireless

telephone number and, thereafter, spent $1,436.09 for new

business cards and stationary.  *Id*. ¶¶ D(IV)(54)-(56).

On October 27, 2009, Kennedy sued Westlake, several

Westlake officers, the Hankey Group, Don Hankey, and three "John

Doe" defendants.  Paper No. 1.  On December 9, 2009, Kennedy

moved to compel the defendants to identify the debt collection

---

Marilyn Wilson and had no responsibility for her debts; (3) had
clear title to his 2001 Chevrolet Blazer; and (4) did not owe
any money to Westlake.  *Id*. ¶ D(IV)(25).  He demanded that
Westlake provide him a copy of the contract showing his alleged
debt and requested that Westlake cease and desist from calling
him about Marilyn Wilson's debts.  *Id*.  Westlake never
responded.  *Id*. ¶¶ D(IV)(26)-(27).

[8]  On August 16, 2009, the caller identified himself as "Miguel."
*Id*. ¶ D(IV)(27).

[9]  During the conversation on August 26, 2009, the Westlake
representative told Kennedy that "[he] and Wilson owe" the debt.
*Id*. ¶ D(IV)(48).

managers and employees at Westlake who attempted to collect a
debt from Marilyn Wilson from August 1-30, 2009.  Mot. to Compel
1-2.  On December 14, 2009, Kennedy moved for sanctions against
the Defendants for failing to mail him a copy of their motion to
extend time.  Sanctions Mot. 1-2.  On January 6, 2010, the
Defendants moved to dismiss.  Paper No. 19.  On January 20,
2010, the Defendants moved to strike Kennedy's surreply or, in
the alternative, to permit them to file a surreply.  Paper No.
22.

II.  Analysis

    A.    Choice of Law

    Maryland ordinarily follows the *lex loci delicti* rule for
choice of law in tort cases.  *Philip Morris Inc. v. Angeletti*,
358 Md. 689, 752 A.2d 200, 230 (Md. 2000).  Under this
principle, courts apply the law of the state where the injury
occurred.  *Id*. at 231.  Because Kennedy's alleged injuries
occurred in this state, Maryland law applies.

    B.    Defendants' Motion to Dismiss

    The Defendants have moved to dismiss (1) the complaint
against the Hankey Group and the individual defendants for lack
of personal jurisdiction; (2) Count IV for lack of subject
matter jurisdiction; (3) Counts I-IV for failure to state a
claim against the Hankey Group and the individual defendants;

(4) Counts I, III, and IV for failure to state a claim against Westlake; and (5) all claims for punitive damages.[10]

     1.   Personal Jurisdiction

Anderson, Kerwin, Hagan, Hankey, and the Hankey Group[11] argue that the claims against them should be dismissed for lack of personal jurisdiction because Kennedy has failed to allege facts connecting them to the State of Maryland. Def.'s Mot. 4-7.[12]

When a court's jurisdiction over a non-resident defendant is challenged under Fed. R. Civ. P. 12(b)(2), "the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003) (*citing Mylan Labs., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993)). If the court rules without an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of

---

[10]  Kennedy filed an affidavit in support of his opposition to the motion to dismiss. Pl.'s Opp., Ex. 1. If matters outside the pleadings are presented, the Court may convert a motion to dismiss into a motion for summary judgment under Fed. R. Civ. P. 12(d). This Court declines to convert the Defendants' motion to one for summary judgment; accordingly, Kennedy's affidavit will not be considered.

[11]  Westlake has not challenged the Court's jurisdiction.

[12]  Kennedy's opposition argues for subject matter and supplemental jurisdiction and mentions the abstention doctrine but does not address personal jurisdiction. *See* Pl.'s Opp. 2-5.

personal jurisdiction." *Id.*[13]   In its determination, the court must draw all reasonable inferences and resolve all factual disputes in favor of the plaintiff.  *Id.*

To establish personal jurisdiction over a nonresident defendant, a plaintiff must show that: (1) the exercise of jurisdiction is authorized by the state's long-arm statute, and (2) personal jurisdiction over the defendant is consistent with due process.  *Id.*[14]  "Maryland has construed [its] long-arm statute to authorize the exercise of personal jurisdiction to the full extent allowable under the Due Process Clause."  *Mackey v. Compass Marketing, Inc.*, 391 Md. 117, 892 A.2d 479, 486 (Md.

---

[13]   If jurisdiction turns on disputed facts, the court may hold an evidentiary hearing and resolve the dispute, or it may defer ruling until after relevant evidence is presented at trial.  *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

[14]   The court may assert either general or specific personal jurisdiction over a nonresident defendant.  *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n.15 (4th Cir. 2009).   General jurisdiction exists when a defendant has "continuous and systematic" contacts with the forum state.  *Id.* By contrast, specific jurisdiction requires only that the relevant conduct have sufficient connection with the forum state that it is fair to require the defendant to defend itself in that state.  *Id.*  Accordingly, "the threshold level of minimum contacts to confer general jurisdiction is significantly higher than that for specific jurisdiction."  *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).  Here, Kennedy has not pled facts to show that any of the Defendants had continuous and systematic contact with Maryland; thus, the court must find specific jurisdiction over each defendant.

2006).[15]   But Maryland courts may not "simply dispense with

analysis under the long-arm statute," which is the appropriate

first step to determine personal jurisdiction.   *Mackey*, 892 A.2d

at 493 n.6; *see also Tech. Patents, LLC v. Deutsche Telekom AG*,

573 F. Supp. 2d 903, 910 (D. Md. 2008).[16]   To comport with due

process, a nonresident defendant also must have "minimum

---

[15]   *See also Beyond Sys., Inc. v. Realtime Gaming Holding Co.,*
LLC, 388 Md. 1, 878 A.2d 567 (Md. 2005) ("Because we have
consistently held that the reach of the long arm statute is
coextensive with the limits of personal jurisdiction delineated
under the due process clause of the Federal Constitution, [the]
statutory inquiry merges with [the] constitutional
examination.").

[16]   Under Maryland's long-arm statute, the court may exercise
personal jurisdiction over a person or his agent who:

   (1)   Transacts any business or performs any character of
         work or service in the State;
   (2)   Contracts to supply goods, food, services, or
         manufactured products in the State;
   (3)   Causes tortious injury in the State by an act or
         omission in the State;
   (4)   Causes tortious injury in the State or outside the
         State by an act or omission outside the State if he
         regularly does or solicits business, engages in any
         other persistent course of conduct in the State or
         derives substantial revenue from goods, food,
         services, or manufactured products used or consumed in
         the State;
   (5)   Has an interest in, uses, or possesses real property
         in the State; or
   (6)   Contracts to insure or act as surety for, or on, any
         person, property, risk, contract, obligation or
         agreement located, executed, or to be performed within
         the State at the time the contract is made, unless the
         parties otherwise provide in writing.

Md. Code Ann., Cts. & Jud. Proc. § 6-103(b).

contacts" with the forum state such that requiring it to defend itself within that state "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Here, the complaint alleges that Westlake is a subsidiary of the Hankey Group.  Compl. ¶ B(2)(a)-(b).[17]  It further alleges that Anderson, Kerwin, and Hagan are Westlake officers responsible for "the development and implementation of . . . [its] policies and procedures pertaining to debt collection practices[.]"  *Id*. ¶ B(2)(d)-(f).  Don Hankey is alleged to be the chairman of the Hankey Group responsible for "ensuring that [it] ha[s] adequate policies and procedures pertaining to debt collection practices."  *Id*. ¶ B(2)(c).  Westlake and the Hankey Group are located in California, and all the individual defendants work in California.  *Id*. ¶ B(2).  The Defendants' only alleged contacts with Maryland are the phone calls made by unknown Westlake representatives to Kennedy, who is a Maryland resident.  *Id*. ¶¶ B(1), D(IV)(6)-(53).

Kennedy appears to assert that all the Defendants are subject to this Court's jurisdiction by virtue of Westlake's activities in Maryland.  But "[a] nonresident corporate officer

---

[17]   Westlake and the Hankey Group are alleged to be incorporated and have their principal places of business in California. Compl. B(2)(a)-(b).

is not subject to this Court's personal jurisdiction simply by virtue of his . . . corporation's activities in Maryland." *Ridgway v. NovaStar Mortgage Inc.*, 2009 WL 5217034, at *3 (D. Md. Dec. 30, 2009).[18]   Nor may this Court assert personal jurisdiction over a parent corporation solely based on its subsidiary's activities in Maryland.  *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005)("[I]t is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity.").  Because it is not alleged that Anderson, Kerwin, Hagan, Hankey, or the Hankey Group has ties to Maryland or has availed itself of the privilege of conducting activities in this state, the Court lacks personal jurisdiction over them.[19]

2.   Failure to State a Claim

a.   Standard of Review

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted.

---

[18]   *See also Hart-Hanks Direct Marketing/Baltimore, Inc. v. Varilease Tech. Fin. Group, Inc.*, 299 F. Supp. 2d 505, 513 (D. Md. 2004)("Personal jurisdiction over an individual officer, director, employee and owner of a corporation does not automatically follow from personal jurisdiction over the corporation.").

[19]   Under Maryland law, the court will pierce the corporate veil only when it is necessary to prevent fraud or to enforce a paramount equity. *See Harte-Hanks*, 299 F. Supp. 2d at 514. Here, there are no allegations of fraud or a paramount inequity that would justify veil piercing.

Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced.  *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 764-65 (4th Cir. 2003).  These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

To present a facially plausible complaint, a plaintiff must do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts as pleaded must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (*quoting Twombly*, 550 U.S. at 557).  The complaint must not only allege but also "show" the plaintiff is entitled to relief. *Id*. at 1950 (*citing* Fed. R. Civ. P. 8(a)(2)).  "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

complaint has alleged--but it has not shown--that the pleader is

entitled to relief."  *Id.* (internal quotation marks omitted).

The Court "should view the complaint in a light most

favorable to the plaintiff," and "accept as true all well-

pleaded allegations," *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130,

1134 (4th Cir. 1993), but the Court is "not bound to accept as

true a legal conclusion couched as a factual allegation,"

*Papasan v. Allain*, 478 U.S. 265, 286 (1986), or "allegations

that are mere[] conclus[ions], unwarranted deductions of fact,

or unreasonable inferences," *Veney v. Wyche*, 293 F.3d 726, 730

(4th Cir. 2002).

> b.    Federal Fair Debt Collection Practices Act

The Federal Fair Debt Collection Practices Act ("FDCPA")

governs "debt collectors."  28 U.S.C. § 1692 *et seq.*  A "debt

collector" is:

> any person who uses any instrumentality of interstate
> commerce or the mails in any business the principal purpose
> of which is the collection of any debts, or who regularly
> collects or attempts to collect, directly or indirectly,
> debts owed or due or asserted to be due another.

28 U.S.C. § 1692a(6) (2006).  Excluded from this definition are

"employee[s] of a creditor collecting debts in the name of the

creditor."  *Sayyed v. Wolpoff & Abramson*, 485 F.3d 226, 230 (4th

Cir. 2007)(*citing* 15 U.S.C. § 1692a(6)).  The Defendants argue

that the facts alleged show that Westlake was not a "debt

collector" because (1) its principal purpose is not debt

12

collection, and (2) it is the direct creditor.  Def.'s Mot. 11-12.

The complaint alleges that Westlake was "doing business specializing in the acquisition and servicing of near-prime to sub-prime automotive retail installment contracts and debt collections relating to those contracts."  Compl. ¶ B(2)(b).  It further alleges that Westlake did not provide Kennedy with "a copy of the contract proving that [he] owed Westlake a debt and that the alleged debt was unpaid."  Compl. ¶ IV(B)(24). Construing these allegations in the light most favorable to Kennedy, the Court may infer that Westlake acquired the right to pursue debts due under contracts to which it was not a party. It is also reasonable to infer that, when Kennedy asked for a copy of the contract showing that he owed a debt to Westlake, he was requesting a copy of the assignment from the original creditor to Westlake.  Making these reasonable inferences in favor of Kennedy, the facts alleged show that Westlake was a "debt collector."  The motion to dismiss the FDCPA claim will be denied.

c.   Negligent Infliction of Emotional Distress

Kennedy has alleged that the Defendants are liable for negligent and intentional infliction of emotional distress.  But Maryland does not recognize an independent cause of action for negligent infliction of emotional distress.  *Lapides v. Trabbic*,

134 Md. App. 51, 758 A.2d 1114, 1121 (Md. Ct. Spec. App. 2000).[20]

Accordingly, that claim must be dismissed.[21]

### d.   Violations of Maryland Criminal Code

Kennedy has asserted a claim for relief under Maryland Code, Criminal Law § 3-804.[22]   Compl. ¶¶ V(A), VII(A)(4). Because this statute provides only criminal penalties, Kennedy's claims under this statute must be dismissed.

### e.   Punitive Damages

Kennedy seeks $750,000 in punitive damages against all the Defendants "for their willful violation of . . . [Kennedy's] right to privacy and their knowing and willful violations of" federal and state debt collection laws.  Compl. ¶ VII(C).   The Defendants have moved to dismiss this claim on the grounds that (1) punitive damages are not available under the FDCPA or the MCDCA, and (2) Kennedy has failed to allege facts to show that the Defendants had "actual malice," which is required to award

---

[20]   "Although recovery may be had in a tort action for emotional distress arising out of negligent conduct . . . the emotional distress is an element of damage, not an independent tort." *Hamilton v. Ford Motor Credit Co.*, 66 Md. App. 46, 502 A.2d 1057, 1066 (Md. Ct. Spec. App 1986), *cert denied*, 306 Md. 118, 507 A.2d 631 (Md. 1986).

[21]   The Defendants have not challenged the claim for intentional infliction of emotional distress under Rule 12(b)(6).

[22] Section 3-804 prohibits (1) anonymous calls intended to harass, (2) repeated calls intended to harass, and (3) calls making obscene or indecent comments, requests, or suggestions. Md. Code. Ann., Crim. Law § 3-804(a).

punitive damages for an invasion of privacy rights and IIED.

Def.'s Mot. 15-18.

Punitive damages are not available under the MCDCA.   Md.

Code Ann., Com. Law § 14-203; *Spencer v. Henderson-Webb, Inc.*,

81 F. Supp. 2d 582, 596-97 (D. Md. 1999); *Cilento v. B.T. Credit

Co.*, 424 F. Supp. 1, 1 (D. Md. 1977).   Damages in an individual

action under the FDCPA are limited to actual damages plus "such

additional damages as the court may allow, but not exceeding

$1,000."   15 U.S.C. § 1692k(a).[23]

Under Maryland law, "to recover damages in *any* tort action

. . . facts sufficient to show *actual malice* must be pleaded and

proven by clear and convincing evidence[.]"   *French v. Hines*,

182 Md. App. 201, 957 A.2d 1000, 1027 (Md. Ct. Spec. App.

2008)(*quoting Scott v. Jenkins*, 345 Md. 21, 690 A.2d 1000, 1003-

04 (Md. 1997))(emphasis in original).   "Actual Malice" requires

conduct motivated by ill will, fraud, intent to injure, or other

*mens rea* exhibiting an evil motive or purpose[.]"   *Id*.

Here, Kennedy has alleged that Westlake representatives

called him repeatedly over a three-week period, failed to

respond to his requests to stop calling and his cease and desist

---

[23]   Punitive damages are not available under the FDCPA.   *Thomas
v. Law Firm of Simpson & Cybak*, 244 Fed. Appx. 741, 743 (7th
Cir. 2007); *Thomas v. Pierce, Hamilton, and Stern, Inc.*, 967 F.
Supp. 507, 509 (N.D. Ga. 1997)(The discretionary statutory award
of "additional damages" precludes an award of punitive
damages.).

letter, used foul language, and threatened to take legal action against him.  But there are no allegations of fraud, ill will, or any evil motive or purpose; the allegedly harassing calls were made to secure payment of a debt.  Because the state and federal fair debt collection statutes do not allow punitive damages, and there are no allegations of actual malice, Kennedy's claim for punitive damages must be dismissed.

C.    Kennedy's Motion to Compel

Kennedy has moved to compel the Defendants to disclose the names of the debt collection managers and employees at Westlake who attempted to collect the Marilyn Wilson debt from August 1-30, 2009.  Paper No. 13 at 1.  The Defendants argue that Kennedy's motion is a premature request for discovery.  Paper No. 15 at 1.

Under Local Rule 104.4, "discovery shall not commence and disclosures need not be made until a scheduling order is entered."  D. Md. R. 104.4.  Accordingly, a party may request, but may not compel, other parties to produce information and provide materials before discovery has commenced.[24]  Because a scheduling order has not been entered, and Kennedy cites no

---

[24]   Fed. R. Civ. P. 37 authorizes a motion to compel when the responding party has failed to comply with a valid discovery request.

other authority for his request, his motion to compel will be

denied.

    D.   Kennedy's Motion for Sanctions[25]

    Kennedy has requested that the Defendants be sanctioned in

the amount of $5,000 for failing to timely provide him with a

copy of their motion to extend time as required by Fed. R. Civ.

P. 5.  Paper No. 14 at 1-2.  The Defendants argue that Kennedy's

motion for sanctions must be denied because (1) he did not

comply with the requirements in Fed. R. Civ. P. 11(c)(2) before

filing a motion for sanctions, and (2) he has not alleged any

harm caused by his failure to receive a copy of the motion.

    Fed. R. Civ. P. 5 does not require sanctions for non-

compliance, and Kennedy has offered no other legal basis for his

request.  To the extent that he intended to move for sanctions

under Rule 11, that request must be denied, as he failed to

serve the Rule 11 motion on the Defendants at least 21 days

---

[25]  The Court will construe Kennedy's "Memorandum of Record and
Motion for Imposition of Penalties," Paper No. 14, as a motion
for sanctions.  As Kennedy's "Supplemental Memorandum of Record
and Motion for Hearing," Paper No. 18, was filed "with reference
to [his] Memorandum of Record and Motion for Imposition of
Penalties," that paper will be construed as his reply in support
of the motion for sanctions.
    Kennedy also filed a supplemental paper captioned
"Plaintiff's Traverse Reply to the Defendants' Opposition to the
Motion for Imposition of Penalties."  Paper No. 21.  The
Defendants moved to strike that reply as an improperly filed
surreply, or in the alternative, requested leave file a surreply
in response.  Paper No. 22.  Because Kennedy did not move for
leave to file a surreply, the Court will grant the Defendants'
motion to strike Paper No. 21.

before filing the motion as required by Fed. R. Civ. P.

11(c)(2).  Kennedy also failed to allege any harms caused by the

two-day delay in posting the motion to extend time.[26]

Accordingly, his motion for sanctions will be denied.

III. Conclusion

For the reasons stated above, Kennedy's motions to compel,

for sanctions, and for a hearing on his motion for sanctions

will be denied.  The Defendants' motion to strike will be

granted, and their motion to dismiss will be granted in part and

denied in part.

April 22, 2010            _____/S/_____
Date                    William D. Quarles, Jr.
                           United States District Judge

---

[26]  Although the parties contest whether Kennedy gave consent to the extension of time, that issue is not before the Court. Here, the issue is solely whether sanctions are appropriate for the two-day filing delay.
     The Certificate of Service states that the Defendants sent Kennedy, by first-class mail, a copy of their motion to extend time on December 7, 2009.  Paper No. 11 at 3.  The Court granted the Defendants' motion to extend time on December 8, 2009. Paper No. 12.  Kennedy alleges that the letter was not actually mailed until December 9, 2009.  Because it is unlikely that-- even if the letter had been mailed on December 7, 2009--Kennedy could have received and responded to that motion within one day, the Defendants' alleged mailing delay did not prejudice Kennedy.